REGER RIZZO & DARNALL, LLP
By: MICHAEL J. NEEDLEMAN, ESQUIRE
IDENTIFICATION NO. 88253
The Cira Centre, 13th Floor
2929 Arch St., Philadelphia, PA  19104
Phone: (215) 495-6500
mneedleman@regerlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY M1210083212 | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Case No.: |
| | : | |
| PRIMAL DEFENSE TRAINING, LLC, CODY SAYLOR, DARIN McMAHON, TIFFANY McMAHON, and SEAN McMAHON, | : | |
| Defendants. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, those Certain Underwriters at Lloyd's, London subscribing to insurance

policy bearing coverage number M1210083212 ("Underwriters"), by and through their

attorneys, and for their Complaint for Declaratory Judgment against defendants, allege as

follows:

## INTRODUCTION

1.      This is an insurance coverage action pursuant to 28 U.S.C. § 2201 in which

Underwriters seek a judicial determination allowing them to rescind the above-referenced

firearm instructor liability insurance policy issued to Defendant Primal Defense Training, LLC

and/or that that no insurance coverage exists under the policy in connection with an underlying

action styled *Darin and Tiffany McMahon, et al., v. Rockwell Tactical Group, LLC*, Case 5:20-

cv-01083-JMG, pending in the U.S. District Court for the Eastern District of Pennsylvania

("Underlying Action"). A true and correct copy of the Second Amended Complaint filed in the Underlying Action ("Underlying Complaint") is attached as **Exhibit A**.

2.      The plaintiffs in the Underlying Action seek damages for injuries sustained by Darin McMahon on or about September 15, 2019 during a reality-based "force on force," simunitions firearms training designed to replicate a real life scenario involving a threat to the participants' safety.

3.      Defendant Primal Defense Training, LLC ("Primal Defense"), through its alleged owner, operator and principal, Defendant Cody Saylor ("Saylor"), is alleged to have provided firearms instruction during the training exercise and to have acted as a role player instructor. Both are named defendants in the Underlying Action.

4.      The Underlying Complaint alleges that Saylor failed to "switch out" his real, live firearm during the training exercise for a non-lethal simunition training firearm, thereby causing injuries to Darin McMahon after discharging his live firearm and striking McMahon. Saylor was charged criminally for his alleged conduct.

5.      Prior to the incident on September 15, 2019, Underwriters issued Policy M1210083212 to Primal Defense, which has effective dates of February 4, 2019 to February 4, 2020 ("the Policy"). A true and correct copy of the Primal Policy is attached as **Exhibit B**.

6.      Consistent with their obligation to act in good faith, Underwriters have been providing a defense to Primal Defense and Saylor under the Policy in the Underlying Action, under a reservation of rights.

7.      In this action, Underwriters seek a judicial determination that the Policy may be rescinded, and/or that coverage is otherwise unavailable, because Primal Defense materially

misrepresented to Underwriters that it did not conduct force on force training when it applied for the Policy, despite a direct question on the application seeking that information.

8.      Underwriters also seek a judicial determination that there is otherwise no coverage under the Policy's Coverage A for general liability because, when the Policy is read as a whole, the allegations in the Underlying Action do not fall within the insuring agreement of that coverage.

9.      Furthermore, even if the allegations in the Underlying Action could fall within the Policy's Coverage A, coverage is excluded by Coverage A's "Professional Services" exclusion, which precludes coverage for injury arising out of the provision of services as a firearm instructor.

10.     Similarly, even if the allegations in the Underlying Action could fall within the Policy's Coverage A, coverage is also excluded by the Policy's "Simunitions" exclusion, which precludes coverage for injury arising out of any simunitions or similar training or exercise, such as the one at issue in the Underlying Action.

11.     As to the Policy's Coverage D for "firearms instructors professional liability," to the extent there is the potential for coverage under the insuring agreement of Coverage D for the allegations in the Underlying Action, Underwriters seek a judicial determination that coverage is excluded by the Policy's "Simunitions" exclusion, which per the terms of the Policy also applies to Coverage D and precludes coverage for liability arising out of any simunitions or similar training or exercise, such as the one at issue in the Underlying Action.

12.     Additionally, to the extent there is the potential for coverage under the insuring agreement of Coverage D for the allegations in the Underlying Action, Underwriters seek a judicial determination that coverage is excluded here by operation of the Policy's "Dishonest

or Criminal Acts" exclusion, which per the terms of the Policy applies to Coverage D and precludes coverage for, among other conduct, "criminal" acts, errors or omissions.

13.     Based on the grounds set forth above, Underwriters seek a declaration that the Policy may be rescinded, and/or that coverage is otherwise unavailable, based on a material misrepresentation in the Policy.  Furthermore, Underwriters also seek a declaration that they have no duty to defend or indemnify Primal Defense or Saylor for the claims asserted against them in the Underlying Action and that to the extent any duty to defend did exist it has been extinguished, as evidenced by various deposition testimony and other discovery that has occurred in the Underlying Action. Thus, Underwriters also seek a declaratory judgment that Underwriters are entitled to withdraw the defense they are currently providing.

## THE PARTIES

14.     Underwriters are individual foreign syndicates organized under the laws of the United Kingdom who underwrite insurance through managing agencies also organized under the laws of the United Kingdom, who in turn trade through the Lloyd's insurance market.

15.     Each of the syndicates' principal places of business are located in the United Kingdom.  None of the syndicates have offices or other locations in the Commonwealth of Pennsylvania.

16.     Each of the syndicates share a proportion of the risk on the relevant insurance policy issued to Primal Defense.  Each of the members of the syndicates' potential risk associated with Underlying Action exceed $75,000.00.

17.     Upon information and belief, Primal Defense is an entity organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a corporate headquarters and

principal place of business located at 2061 Auden Lane, Allentown, Pennsylvania. Upon information and belief, it is owned and operated by Cody Saylor.

18.     Upon information and belief, Defendant Cody Saylor is an adult individual and citizen of the Commonwealth of Pennsylvania residing at 2033 Pennsylvania Avenue, Allentown, Pennsylvania.

19.     Upon information and belief, Defendants Darin McMahon ("Darin") and Tiffany McMahon ("Tiffany" collectively, the "McMahons") are husband and wife adult individuals and citizens of Delaware residing at 16042 Fox Club Circle, Milton, Delaware. Darin and Tiffany are plaintiffs in the Underlying Action, and are named here as nominal defendants.

20.     Upon information and belief, Defendant Sean McMahon ("Sean") is an adult individual and a citizen of Delaware residing at 22190 Jefferson Road, Lincoln, Delaware. Sean is a plaintiff in the Underlying Action, and is named here as a nominal defendant.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because (a) Underwriters are citizens of a foreign state (United Kingdom) and the defendants are citizens of either Pennsylvania or Delaware, as the case may be, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

22.     An actual justiciable controversy between Underwriters on the one hand and defendants on the other, exists within the meaning of 28 U.S.C. § 2201 regarding whether Underwriters have a duty to defend or indemnify Primal Defense and/or Saylor under the Policy with respect to the claims asserted in the Underlying Action, as more particularly described below.

23.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in the Eastern District of Pennsylvania because jurisdiction is founded upon diversity of citizenship, and the events giving rise to the claims asserted in the Underlying Action occurred in the Eastern District of Pennsylvania. Moreover, the Underlying Action is currently pending in the Easter District of Pennsylvania under Case 5:19-cv-05292-JMG.

## THE UNDERLYING ACTION

24.     Underwriters incorporate by reference the allegations of all preceding paragraphs as though pled here.

25.     The plaintiffs in the Underlying Action filed their original complaint on or about November 8, 2019.

26.     On or about November 21, 2019, the plaintiffs in the Underlying Action filed an Amended Complaint.

27.     On or about April 2, 2020, the plaintiffs in the Underlying Action sought leave of Court to amend their complaint again.

28.     On or about June 10, 2020, the plaintiffs in the Underlying Action filed a Second Amended Complaint.

29.     On or about December 3, 2020, the Court in the Underlying Action issued an order granting the plaintiffs' previous April 2, 2020 motion for leave to amend their complaint and ordered the clerk to file the plaintiffs' Second Amended Complaint (herein "Underlying Complaint") and deem the date filed as April 2, 2020.

30.     The Underlying Complaint alleges that on September 15, 2019, Darin McMahon attended a situational, reality-based "force on force" firearms training simulation at

a training facility operated by Threat Assessment and Tactical Solutions Group, LLC

("TATS"). *See* **Exhibit A**, Second Am. Compl. at ¶¶4, 27, 55.

31.     TATS is also named as a defendant in the Underlying Action. *Id.* at ¶ 4.

32.     It is alleged that the TATS training facility is on premises owned by TKD

Properties, LLC ("TKD"). *Id.*

33.     TKD is also named as a defendant in the Underlying Action. *Id.* at ¶ 14.

34.     TATS is alleged to own and operate "a reality based training simulated force-

on-force scenario tactical training facility" and to be a firearms and defensive measures

training company that "provides training to prepare law enforcement officers, armed

professionals and responsible citizens to survive imminent, real world threats." *Id.* at ¶¶ 4, 26.

35.     It is alleged that the training session at issue took place at TATS' "shoot-house"

complex, and that the session involved "situational, reality based firearms training 'RBT'

simulations." *Id.* at ¶ 55.

36.     Specifically, it is alleged that "[Rockwell Tactical Group, LLC ("RTG")],

TATS and the individual instructors were conducting RBT training simulations" that were

separated into a morning and afternoon sessions. *Id.* at ¶ 63.

37.     The individual instructors, it is alleged, were Nathan Murr ("Murr"), Brandon

Kehr ("Kehr"), Joshua Prince ("Prince") and Saylor. *Id.* at ¶ 111.

38.     The Underlying Complaint alleges that Darin was participating in the training as

part of a "recreational, weekend-long trip." *Id.* at ¶ 55.

39.     The Underlying Complaint alleges that RTG rented the "shoot-house" facility

from TATS for the training." *Id.* at ¶¶ 56, 97 and 135.

40.    RTG is alleged to be a firearms training company whose founder and owner is Jared Ross. *Id.* at ¶ 22.

41.    RTG is alleged to provide weapons training in which participants use modified guns manufactured by Ultimate Training Munitions, Inc. ("UTM") that are chambered to shoot paint or chalk markings. *Id.* at ¶¶ 38-40. These firearms are typically identified by a brightly colored marking on the weapon. *Id.* at ¶ 39.

42.    The Underlying Complaint states that "Ross was not present for the weekend at TATS, but allowed TATS, Murr, Prince, Saylor, Kehr and the customers including Darin McMahon to use his UTM guns for training." *Id.* at ¶ 57.

43.    The Underlying Complaint alleges that UTM guns refers to "Ultimate Training Munitions," "the manufacturer of conversion kits created to allow real firearms to shoot paint-filled 'man marking rounds' and said conversion kits were utilized by RTG in their force-on-force training." *Id.* at ¶ 38.

44.    It is alleged that the "force on force" scenario at issue was created by role players. *Id.* at ¶¶ 32, 65, 75.

45.    The Underlying Complaint alleges that the "aggressor role players instructors" for the training "were shooting range instructors Josh Prince from Civil Rights Defense Firm and Cody Saylor from Primal." *Id.* at ¶ 65.

46.    The Underlying Complaint alleges that RTG, through Ross, "partnered with Saylor and Primal Defense to use Saylor as an instructor at TATS." *Id.* at ¶ 125.

47.    It further alleges that "Saylor was a subcontractor of RTG" at the relevant times and "was acting on behalf of RTG and/or an independent contractor for RTG with Primal Defense." *Id.* at ¶ 86.

48.     The Underlying Complaint alleges that during the session at issue Darin entered the TATS shoot-house to participate in the simulations. *Id.* at ¶ 55.

49.     The Underlying Complaint alleges that each attendee and participant were supposed to be frisked, but that this did not take place. *Id.* at ¶ 66.

50.     It also alleges that no security was employed to ensure that live round firearms were not brought into the facility. *Id.* at ¶ 67.

51.     The Underlying Complaint alleges that the instructor role players, Cody Saylor and Joshua Prince, did not frisk each other prior to the incident. *Id.* at ¶ 75.

52.     It is alleged that each attendee was to enter the shoot-house and react to the force-on-force scenario exhibited by Prince and Saylor. *Id.* at ¶ 76.

53.     Prince, Saylor and Darin were to have been equipped with the modified UTM firearm. *Id.* at ¶ 76.

54.     The Underlying Complaint alleges that Saylor mistakenly did not switch out his live Glock firearm, which was not detected because he was not frisked by Prince and Murr. *Id.*

55.     It is alleged that Saylor shot Darin with a live round. *Id.* at ¶ 78.

56.     In Count V of the Underlying Complaint, Darin sets forth a cause of action for "negligence" against Saylor alleging, *inter alia*, he breached a duty to Darin by failing to "ensure he did not use a real weapon during the force-on-force scenario training." *Id.* at ¶¶ 164-178.

57.     In Count VI of the Underlying Complaint, Darin sets forth a cause of action for "negligence per se" against Saylor alleging, *inter alia*, he is civilly liable on account of criminal charges brought against and his "violation of . . . criminal statutes" arising from his conduct at the relevant force-on-force training session. *Id.* at ¶¶ 179-188.

58.     In Count VII of Underlying Complaint, Darin sets forth a cause of action for "negligence" against Primal Defense alleging, *inter alia*, it is vicariously liable for the acts or omissions of Saylor. *Id.* at ¶¶ 189-201.

59.     In Count XIII of the Underlying Complaint, Sean, sets forth a cause of action for "negligent infliction of emotional distress" against all defendants, alleging, *inter alia*, that the conduct of the defendants, in part described above, caused him severe psychiatric injuries and emotional distress. *Id.* at ¶¶ 290-295.

60.     In Count XIV of the Underlying Complaint, Tiffany sets forth a cause of action for "loss of consortium" against all defendants, alleging, *inter alia*, that the conduct of the defendants, in part described above, has caused her to incur medical costs and to expend medical care to her spouse which will continue into the future, as well as deprived her a loss of companionship and consortium of her husband. *Id.* at ¶¶ 296-298.

61.     Primal Defense and Saylor tendered the Underlying Action to Underwriters for defense and indemnity, and Underwriters agreed to defend them subject to a reservation of rights, including reserving rights to later withdraw the defense if it were to be determined that the Underlying Action did not give rise to a potential for coverage under Underwriters' Policy.

## THE POLICY

62.     The policy issued to Primal is a Firearms Instructor *Plus* Liability Insurance policy bearing Policy Coverage No. M1210083212 with effective dates of February 4, 2019 to February 4, 2020 ("Policy"). *See* **Exhibit B**.

63.     The Policy is subject to per occurrence and aggregate limits of liability, e.g., $1,000,000 per occurrence/$2,000,000 in the aggregate. *Id.*

64.     The Policy lists "Primal Defense Training, LLC" as the Named Insured. *Id.*

65.     The Policy also contains the following condition to coverage:

**E. REPRESENTATIONS**

By accepting this policy, you agree

1. the statements in the Schedule of Insurance are accurate and complete;
2. those statements are based upon representations you made to us; and
3. we have issued this policy in reliance upon your representations.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 10 of 15.

66.     The Policy's insuring agreement under Coverage A provides that Underwriters "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." **Exhibit B**, Form NRA (Section 12) 7/15, p. 1 of 15.  The insuring agreement further provides that Underwriters "have the right and duty to defend the insured against any 'suit' seeking those damages[,]" but that Underwriters "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

67.     In relevant part, the Policy provides coverage for "bodily injury" that is caused by an "occurrence" that takes place in the "coverage territory" during the policy period. *Id.*

68.     "Bodily injury" is defined to mean "sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at p. 12 of 15.

69.     The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at p. 13 of 15.

70.     The Policy's Coverage A, however, contains the following exclusion to coverage:

This insurance does not apply to:

**o. Professional Services**

"Bodily injury" or "property damage" arising out of the
rendering or failure to render professional services as a
"firearms instructor".

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

71.    The Policy's Coverage A also contains the following additional exclusion:

**q. Simunitions**[1]

"Bodily injury" or "property damage" arising out of any
simunitions or similar training or exercise.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

72.    Exclusion q. for Simunitions is amended by the "AMENDMENT TO
SIMUNITIONS EXCLUSION, as follows:

This endorsement modifies insurance provided under the following:

**FIREARMS INSTRUCTOR PLUS LIABILITY INSURANCE**

I.    **SECTION I. COMMERCIAL GENERAL LIABILITY COVERAGE A. "BODILY INJURY" AND
"PROPERTY DAMAGE" LIABILITY is amended as shown below.**

**Exclusion 2.q. Simunitions is deleted and replaced by the following:**

**q. Simunitions**
"Bodily injury" or "property damage" arising out of any simunitions or similar training or exercise.
This exclusion does not apply to any NRA Approved UTM <u>Target Shooting</u> products utilized by a UTM
Certified Instructor while engaged in NRA approved course instruction.

**Exhibit B**, Form MPL0001 08 16, p.1 of 1.

73.    The Policy's insuring agreement under Coverage D provides that Underwriters
will "pay those sums you are legally obligated to pay as damages resulting from a 'wrongful
act' arising out of the conduct of your services as 'firearms instructor.'" **Exhibit B**, Form NRA
(SECTION 12) 7/15, at p. 6 of 15.

---

[1] The Policy uses the spelling "Simunitions" and "Simmunitions" interchangeably. For clarity this Complaint uses
"Simunitions."

74.     The "'wrongful act' must take place within the 'coverage territory' during the policy period. *Id.* at Page 6 of 15.

75.     The term "wrongful act" is defined as "any negligent act, error, misstatement, misleading statement or omission in the performing or failing to perform services, as a "firearms instructor." *Id.* at p. 14 of 15.

76.     The term "firearm instructor" is defined as "a person or company in the business of training individuals in firearms or defense related training, education, instruction and coaching, and includes Range Safety Officers." *Id.* at Page 12 of 15.

77.     Coverage D includes, however, the following exclusion to coverage:

This insurance does not apply to:

**f. Dishonest or Criminal Acts**

Dishonest, fraudulent, criminal, illegal, intentional, or malicious act, error or omission.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 6 of 15.

78.     The Policy Coverage D also contains the following additional exclusion:

**l. Simunitions**

Any liability arising out of any simunitions or similar training or exercise.

**Exhibit B**, Form NRA (Section 12) 7/15, p. 4 of 15.

79.     However, like with Coverage A, Exclusion l. for Simunitions is amended by the "AMENDMENT TO SIMUNITIONS EXCLUSION, as follows:

This endorsement modifies insurance provided under the following:

**FIREARMS INSTRUCTOR PLUS LIABILITY INSURANCE**

\* \* \*

II.   **SECTION I. COMMERCIAL GENERAL LIABILITY COVERAGE D. FIREARMS INSTRUCTORS PROFESSIONAL LIABILITY is amended as shown below.**

**Exclusion 2.l. Simunitions is deleted and replaced by the following:**

**m. Simunitions**
Any liability arising out of any simunitions or similar training or exercise. This exclusion does not apply to any NRA Approved UTM <u>Target Shooting</u> products utilized by a UTM Certified Instructor whileengaged in NRA approved course instruction.

*See* **Exhibit B**, Form MPL0001 08 16, Page 1 of 1.

## <u>POLICY APPLICATION AND UNDERWRITING</u>

80.    The Policy is an online insurance product in the sense that an applicant seeking insurance under the relevant insurance program is required to complete an online insurance application.  No paper application exists.

81.    The online application form includes the following question to an applicant: "Do you conduct force on force training?"

82.    "Force on force training" in this context means a firearms training exercise using simunitions or similar non-lethal marking ammunition, where role players play out real life scenarios.

83.    The online application form requires that an applicant choose either a "yes" or "no" answer directly beneath the question asking: "Do you conduct force on force training?"

84.    If an applicant selects the "yes" option, the following message appears:

> * Unfortunately, we will not be able to provide you with coverage at this time due to established underwriting guidelines. If you have questions or if we can be of assistance, please contact one of our Client Solutions representatives at 877-NRA-3006 (option 3).

85.    Consistent with the message outlined directly above, Underwriters will not offer insurance to any applicant indicating that it conducts force on force training.

86.     Relative to the Policy here, Primal entered a "no" answer to the question "Do you conduct force on force training?"

87.     A four (4) page Policy Profile data report printout exists evidencing that Primal answered "no" described above.  That report is attached hereto as **Exhibit C**. The relevant information is contained on Page 4 of the report.

## COUNT ONE

### (Declaratory Relief - No Duty to Defend or Indemnify under Policy – Policy May be Rescinded)

88.     Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

89.     Upon information and belief, Primal Defense's representations in its application for insurance coverage that it did not conduct "force on force" training were knowingly false, misleading and untrue.

90.     Such representations by Primal were relied on by Underwriters and were material to the risk being insured, as Underwriters would not have issued the Primal Policy had they known that Primal Defense conducted "force on force" training.

91.     Underwriters wish to rescind the Policy due to Primal Defense's material misrepresentations.

92.     Underwriters will return any premium paid for the Policy upon the Court allowing rescission or the insured accepting rescission.

## COUNT TWO

### (Declaratory Relief - No Coverage A Damages Alleged and/or Same are Excluded by Professional Services Exclusion)

93.     Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

94.     For coverage to exist under Coverage A of the Policy, there must be damages because of "bodily injury" or "property damage" from an "occurrence."

95.     The Underlying Complaint does not allege injury to property and therefore does not allege "property damage."

96.     As described above, the Underlying Complaint asserts that Darin suffered bodily injuries as a result of alleged negligent acts, errors or omissions on the part of Primal Defense and Saylor while acting as firearms instructors at the training event at issue.  Under the Policy's terms and definitions, and when the Policy is read as a whole, none of these allegations constitute injury from an "occurrence" within the meaning of the Policy.

97.     As the Underlying Complaint does not seek damages because of "bodily injury" or "property damage" from an "occurrence," there can be no coverage under the Policy's Coverage A.

98.     Additionally, the Policy's "Professional Services" exclusion precludes coverage for "bodily injury" or "property damage" arising out of the rendering or failure to render professional services as a "firearms instructor."

99.     The Underlying Complaint alleges Darin suffered injuries as a result of alleged negligent acts, errors or omissions on the part of Primal and Saylor while acting as firearms instructors at the training event at issue.

100.    These injuries thus arise out of the rendering or failure to render professional services as a "firearms instructor."

101.    Therefore, even if the Complaint in the Underlying Action alleged "bodily injury" or "property damage" from an "occurrence," coverage would nonetheless be excluded under Coverage A by the Professional Services exclusion.

102.    Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Defendants against the Underlying Action under the Policy's Coverage A and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT THREE

### (Declaratory Relief – To the Extent Coverage A Damages Exist, Same are also Excluded by the Simunitions Exclusion)

103.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

104.    Under Coverage A, the Policy's "Simunitions Exclusion," as amended, precludes coverage for "bodily injury" or "property damage" arising out of any simunitions or similar training or exercise.

105.    Simunitions are non-lethal training ammunition that create marking rounds for, among other things, situational, reality-based training simulations to simulate the effects of live fire.

106.    The only exception under the exclusion is where the injury or damage occurs at an NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

107.    The Underlying Complaint alleges that Darin McMahon was injured when he attended a situational, reality-based "force on force" firearms training simulation that involved non-lethal training ammunition.

108.    The Underlying Complaint, as well as facts established in discovery Underlying Action, make clear that the training exercise attended by Darin McMahon did not involve NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

109.    Therefore, even if the Complaint in the Underlying Action alleged "bodily injury" or "property damage" from an "occurrence," coverage would nonetheless be excluded under Coverage A by the Simunitions Exclusion, as amended.

110.    Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Primal or Saylor against the Underlying Action under the Policy's Coverage A and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT FOUR

### (Declaratory Relief – Any Potential Coverage under Coverage D is Excluded by the Dishonest or Criminal Acts Exclusion)

111.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

112.    Under Coverage D, the Policy's "Dishonest or Criminal Acts" exclusion precludes coverage for "[d]ishonest, fraudulent, criminal, illegal, intentional, or malicious act, error or omission.

113.    Saylor has been charged criminally for his conduct relating to the injuries sustained by Darin McMahon at the relevant training exercise.

114.    All of the plaintiffs' injuries in the Underlying Action arise from Saylor's conduct.

115.    Therefore, insofar as there is the potential for Coverage under Coverage D of the Policy, coverage would be excluded by operation "Dishonest or Criminal Acts" exclusion.

116.    Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Primal Defense or Saylor against the Underlying Action under the Policy's Coverage D.

## COUNT FIVE

### (Declaratory Relief – Any Potential Coverage under Coverage D is Excluded by the Simunitions Exclusion)

117.    Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

118.    Under Coverage D, the Policy's "Simunitions Exclusion," as amended, precludes coverage for "any liability arising out of any simunitions or similar training or exercise."

119.    Simunitions are non-lethal training ammunition that create marking rounds for, among other things, situational, reality-based training simulations to simulate the effects of live fire.

120.    The only exception under the exclusion is where the injury or damage occurs at an NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

121.    The Underlying Complaint alleges that Darin was injured when he attended a situational, reality-based "force on force" firearms training simulation that involved non-lethal training ammunition.

122.    The Underlying Complaint, as well as discovery in the case, makes clear that the training exercise attended by Darin did not involve NRA Approved UTM Target Shooting products utilized by a UTM Certified Instructor while engaged in NRA approved course instruction.

123.    Therefore, insofar as there is the potential for coverage under Coverage D of the Policy, coverage would nonetheless be excluded under Coverage D by the Simunitions Exclusion, as amended.

124.   Underwriters are thus entitled to a declaration that they have no duty to defend or indemnify Primal or Saylor against the Underlying Action under the Policy's Coverage D and that they may, therefore, withdraw the defense currently being provided to the Defendants.

## COUNT SIX

## (Declaratory Relief – No Coverage for Punitive Damages

125.   Underwriters refer to and incorporate by reference the allegations set forth in the preceding paragraphs as though fully set forth here.

126.   The Underlying Complaint seeks punitive damages directly against the defendants in the Underlying Action.

127.   Directly assessed punitive damages are not insurable in Pennsylvania.

128.   As a result, to the extent punitive damages are awarded in the Underlying Action, they would not be covered by the Policy.

129.   Underwriters are thus entitled to a declaration that in the unlikely event that coverage exists under the Policy, there is no indemnification obligation for any punitive damages awarded.

WHEREFORE, Underwriters pray for judgment against Defendants as follows:

1.   For a declaration that Underwriters may rescind the Policy, and that therefore there is no potential coverage for, nor a duty to defend or indemnify, under the Policy for the claims asserted in the Underlying Action, or alternatively that any duty to defend that might have existed has been extinguished.

2.   For a declaration that there is otherwise no potential coverage for, nor a duty to defend or indemnify, under the Policy for the claims asserted in the Underlying Action, or

alternatively that any duty to defend that might have existed has been extinguished.

     3.    For a declaration that Underwriters are entitled to withdraw the defense they are currently providing under the Policy to Primal Defense and Saylor.

     4.    For a declaration that there is no coverage under the Policy for punitive damages.

     5.    For such other and further relief as the Court deems appropriate.


DATED: April 8, 2021

Respectfully submitted,

REGER RIZZO & DARNALL LLP

By_____

Michael J. Needleman, Esquire
2929 Arch Street
Philadelphia, PA 19104
mneedleman@regerlaw.com

and

Matthew A. Ferrigno, Esq.
PAUL FRANK + COLLINS P.C.
One Church Street
P.O. Box 1307
Burlington, VT 05402
(802) 658-2311
mferrigno@pfclaw.com

*Pro Hac Vice application to be filed*

Attorneys for Plaintiff
CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY
M1210083212

        :